**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

---

| | | |
|---|---|---|
| **IVA JOY and WILLIAM JOY,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 1:20-cv-1131-STA-jay** |
| | ) | |
| **AMGUARD INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant/Third Party Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ANTHONY LANCASTER** | ) | |
| **INSURANCE AGENCY, INC., and** | ) | |
| **ANTHONY LANCASTER,** | ) | |
| | ) | |
| **Third Party Defendants.** | ) | |

---

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ORDER GRANTING IN PART, DENYING IN PART THIRD-PARTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

Before the Court are Defendant/Third-Party Plaintiff AmGuard Insurance Company's Motion for Summary Judgment (ECF No. 56), Plaintiffs Iva Joy and William Joy's Motion for Partial Summary Judgment (ECF No. 57), and Third-Party Defendants Anthony Lancaster Insurance Agency, Inc. and Anthony Lancaster's Motion for Summary Judgment (ECF No. 58). The parties having now fully briefed the issues, the parties' Motions are ripe for determination. The Court held a motion hearing with counsel for the parties on October 19, 2021. For the

1

reasons set forth below, Plaintiffs and Defendant's Motions are **DENIED**, and Third-Party Defendants' Motion is **GRANTED in part, DENIED in part**.[1]

## BACKGROUND

Plaintiff Iva Joy applied for a homeowners insurance policy issued by Defendant AmGuard Insurance Company ("AmGuard"). Joy worked with an insurance agency, the Anthony Lancaster Insurance Agency, Inc. ("the Lancaster Agency"), and its owner Anthony Lancaster ("Lancaster") to make her application. The Lancaster Agency was an authorized agent of AmGuard. An employee of the agency took down Joy's information for the policy and prepared what AmGuard describes as a "proposal" for insurance. But the "proposal" for insurance at the Joys' property erroneously indicated that the Joys' home was equipped with a sprinkler system for fire suppression. AmGuard issued the policy, and Joy paid her premium. It turned out, however, that Joy's residence did not have a sprinkler system, so when a fire broke out in the home several months later, the property suffered serious damage. AmGuard thereafter denied Joy's claim for the damages based on the fact that the "proposal" stated that the home had sprinklers. Iva Joy and her husband William Joy filed suit against AmGuard for breach of the policy, and AmGuard filed a third-party suit against Lancaster and the Lancaster Agency. All parties now seek judgment as a matter of law on a series of issues.

To decide the parties' Rule 56 motions, the Court must first consider whether any genuine issue of material fact exists that might preclude judgment as a matter of law. A fact is

---

[1] At the conclusion of the October 2021 motion hearing, the Court directed the parties to engage in mediation and then report back to the Court. The parties' mediator filed a mediation certification (ECF No. 79) on December 3, 2021, stating the parties were unable to resolve their dispute. Defendant AmGuard Insurance Company thereafter filed a Motion to Reset the Trial Date and Motion for a Ruling on the parties' Rule 56 motions (ECF No. 80) on December 29, 2021. The trial date having now been reset for June 27, 2022, and the Court's rulings on the

2

material if the fact "might affect the outcome of the lawsuit under the governing substantive law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite particular parts of the record and show that the evidence fails to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a fact.  Fed. R. Civ. P. 56(c)(1).  Local Rule 56.1(a) requires a party seeking summary judgment to prepare a statement of facts "to assist the Court in ascertaining whether there are any material facts in dispute." Local R. 56.1(a).  Each party has filed a statement of undisputed facts, and the responding parties have answered each of the statements to indicate whether it admits the contention or disputes it.

## I.       Motion to Strike (ECF No. 65)

Before considering the parties' positions on the evidence, the Court first considers Plaintiffs' Motion to Strike (ECF No. 65) the declaration of an AmGuard employee.  The declarant, Read Walden, is a personal property lines claims manager for Berkshire Hathaway Guard Insurance Companies.  (Walden Decl. ¶¶ 1, 2; ECF No. 56-3.)  Walden stated under oath that the "Proposal of Insurance" is AmGuard's document to offer a potential insured insurance coverage.  (*Id.* ¶¶ 4, 5.)  According to Walden, if the representations in the "Proposal" are true and correct and the potential insured chooses to accept the offer, the potential insured signs the "Proposal" and returns it to AmGuard.  (*Id.*)  AmGuard relies on the insured's representations in the "Proposal" when determining whether to issue a policy.  (*Id.* ¶ 6.)  Iva Joy signed the

---

Rule 56 Motions announced in this opinion, AmGuard's Motion is **DENIED** as moot.

"Proposal," thereby affirming the representations about her property in the "Proposal" and faxed the signature page to AmGuard. (*Id.* ¶ 7.) Based on the representations contained in the "Proposal" and Iva Joy's signature affirming the representations, AmGuard agreed to issue the policy. (*Id.* ¶ 9.)

The Joys raise several objections to the Walden declaration. First, the Joys argue that the "Proposal of Insurance" attached as exhibit A to Walden's declaration was not previously produced in discovery. Rule 37(c)(1) of the Federal Rules of Civil Procedure requires the exclusion of any information or witness "on a motion, at a hearing, or at a trial" if the proponent of the information or witness previously failed to disclose the proof in accordance with Rule 26(a) or (e), unless the party can show that the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). Rule 26(a) requires a party to make initial disclosures of all documents in the possession of the disclosing party and which the disclosing party "may use to support its claims or defenses," with exception for any witness or proof used "solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A) & (B). Rule 26(e) then requires a disclosing party to supplement any disclosure or discovery response in a timely manner. Fed. R. Civ. P. 26(e).

There is no doubt the "Proposal of Insurance" is material to the issues in this case; the Joys referenced it in their Amended Complaint. Am. Compl. ¶4 (ECF No. 34). It cannot be said that the existence of the document has taken any party by surprise. Counsel for AmGuard has stated in response to the Motion to Strike that the document was produced to the Joys, both in discovery and after the Joys filed their Motion to Strike. Counsel does add the caveat that he took over the case from another attorney at his firm who had initially represented AmGuard in this matter and cannot now vouch for what documents the former attorney produced in discovery. In any event, counsel states that he made a second production of all documents in

AmGuard's possession after the Joys questioned the version of the "Proposal" attached to the Walden Declaration.

The Joys have not contested this version of the facts.  To be clear the Joys do not actually state that they have never received a copy of the "Proposal of Insurance" in discovery.  Their objection seems to be that the copy attached to the Walden declaration is not the same version produced in discovery because, as they point out, the copy filed with the declaration does not contain Bates stamp numbering.  The Joys have not shown that the document is altered or in any way different from the version that was previously produced.  Under the circumstances, the Court finds that no violation of Rule 26(a) or (e) has occurred and that even if it has, the violation is harmless.  Therefore, this objection is overruled.

Next, the Joys argue that the "Proposal of Insurance" attached as exhibit A to the declaration is unauthenticated and therefore inadmissible hearsay.  "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  Walden has furnished a declaration attested under penalty of perjury pursuant to 28 U.S.C. § 1746.  *See Worthy v. Mich. Bell Tel. Co.*, 472 F. App'x 342, 343 (6th Cir. 2012) (explaining that 28 U.S.C. § 1746 permits unsworn declarations in lieu of affidavits where the declarations "are made under penalty of perjury, certified as true and correct, dated, and signed").  Walden has attested that the "Proposal of Insurance" is a true and correct copy of the "proposal" AmGuard presented to Iva Joy.  This suffices to authenticate the document for purposes of Rule 901(a).  As such, the Joys' objection on this point is also overruled.[2]

_____

[2] AmGuard argues in response to the Motion to Strike that the insurance policy is a certified copy of the policy issued to Iva Joy.  However, the Joys' objection is not to the

This just leaves the Joys' objection that Walden lacks personal knowledge of each fact asserted in his declaration, specifically that Iva Joy herself signed the application for the policy or that Walden has firsthand knowledge of the company's underwriting process or its reliance on the facts stated in the "Proposal of Insurance." Rule 56(c)(4) sets out the requirements for affidavits and declarations used to support a motion for summary judgment: both "must be made on *personal* knowledge, set out facts that would be admissible in evidence, and *show* that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4) (emphasis added). Walden appears to be competent to testify about AmGuard's internal procedures. He states in his declaration that he is a personal lines property claims manager for Berkshire Hathaway Guard Insurance Companies. A certified copy of Iva Joy's policy, which is attached as an exhibit to Walden's declaration, states that AmGuard Insurance Company is the carrier, and the letterhead on the cover letter attached to the policy as well as the first page of the policy declarations state "Berkshire Hathaway Guard Insurance Companies." *See* Policy (ECF No. 2-1), incorporated by reference into Am. Compl. (ECF No. 34). Walden further states that he has personal knowledge of the "proposal" process and how AmGuard relies on a customer's signed "proposal" before issuing a policy. All of these averments meet the requirements of Rule 56(c)(4).

The only real question is whether Walden has personal knowledge that the signature appearing on the "Proposal of Insurance" is actually Iva Joy's. While the Joys question how Walden could have personal knowledge of the fact, it does not appear to the Court that AmGuard relies on Walden's declaration to prove up the authenticity of the signature appearing on the

---

authenticity of the policy (ex. 1 to AmGuard's Mot. for Summ. J.) but to the "Proposal of Insurance."

"Proposal of Insurance."  Rather, AmGuard appears to rely on the signature to show that Iva Joy agreed to the statements contained in the "Proposal of Insurance."  And on this point, the Joys have not actually introduced evidence to dispute the essential claim that Iva Joy gave her assent to the "Proposal of Insurance."  As the Court discusses in more detail below, there is a dispute over who supplied the answers on the "Proposal of Insurance" and, to a lesser extent, whether Iva Joy actually signed the "Proposal."  That dispute does not render Walden's declaration inadmissible.  For each of these reasons, the Court will overrule the Joys' personal-knowledge objection to the Walden declaration.  Therefore, the Joys' Motion to Strike is **DENIED**.

## II.  Factual Background

Based on the parties' submissions, the Court finds that the following facts are undisputed for purposes of summary judgment, unless otherwise noted.  Anthony Lancaster was an authorized insurance agent for AmGuard.  (Lancaster Statement of Undisputed Fact ¶ 1, ECF No. 58-2.)  On or about December 17 or 18, 2019, the Lancaster Agency prepared and submitted an electronic insurance application to AmGuard on behalf of Iva Joy.  (*Id.* ¶ 2; Pls.' Statement of Undisputed Fact ¶ 1.)[3]  In Section V of this "Proposal of Insurance" under "Application Information," the document reads "automatic sprinklers" in one column and beside it the words

---

[3] AmGuard admits Lancaster's statement that he "completed an electronic application" on behalf of Iva Joy but denies that the Lancaster Agency "prepared and submitted" the application, to the extent that it implies or suggests that Iva Joy did not also sign the application. (Def.'s Resp. to Statement of Undisputed Fact ¶ 1, ECF No. 61).  It is not clear to the Court how an insurance agent could "complete" an application on behalf of an insured but not "prepare" it. And there is no other evidence in the record to show that anyone other than Lancaster submitted the completed application to AmGuard.  As the Court discusses in more depth below, there is a genuine dispute over the information contained in the document and what bearing it has on the parties' rights and obligations under the policy.

"all areas except attic, bathroom, closet, & attached structure areas." (AmGuard's Statement of Fact ¶ 2, ECF No. 56).

Based on the information provided in the "Proposal of Insurance," AmGuard issued homeowners policy no. IVHO038445 to Iva Joy, effective December 18, 2019, to December 18, 2020. (*Id.* ¶ 4; Lancaster Statement of Undisputed Fact ¶ 3.) The homeowners policy provided coverage for Joy's residence, personal property, and additional living expenses. (Pls.' Statement of Undisputed Fact ¶ 5.) The declarations page of Joy's policy contained the following statement regarding protective devices: "As a condition of this insurance, you MUST maintain the protective devices or services shown below and discussed on form HO 99 83 attached to your policy. You should also be prepared to supply proof of proper maintenance upon request." (AmGuard's Statement of Fact ¶ 5.) The protective device "shown below" was "Sprinkler: in all areas except attic, bathroom, closet & attached structure areas." (*Id.* ¶ 5.) The policy also included form HO 99 83 08 017 where it defined "protective devices" as the devices listed "on your declaration pages that include fire alarms, burglar alarms, sprinkler systems and water sensors." (*Id.* ¶ 7.)

At the time AmGuard issued the policy to Iva Joy, AmGuard had an internal procedure that required the company to confirm the presence of a sprinkler system at an insured property, if the insured's application had indicated the presence of a sprinkler system. (Lancaster Statement of Undisputed Fact ¶ 10.) AmGuard, as a matter of custom and procedure, verified the presence of sprinkler systems and other property conditions that might entitle the customer to a similar discount. (*Id.* ¶ 12.) If AmGuard did not receive verification of the presence of the sprinkler system, AmGuard's internal procedure stated that it would change the sprinkler endorsement on the policy, and the policy would otherwise remain in effect. (*Id.* ¶ 11.) Likewise, agents like

8

Anthony Lancaster received a prompt on AmGuard's electronic application, which indicated that if the discount were not verified within 60 days of the policy issuing, AmGuard would remove the discount. (*Id.* ¶ 13.) At no point did AmGuard take additional steps to verify the presence of the sprinkler system at Joy's property. (*Id.* ¶ 14.) AmGuard did not cancel Joy's policy. (*Id.* ¶ 15.)

On May 5, 2020, the Joys lost their residence and its contents in a fire. (*Id.* ¶ 6.) The Joys sustained damages of approximately $228,148 for loss of the dwelling and $114,074 for loss of personal property and the contents of the home and incurred additional living expenses of approximately $68,444. (*Id.* ¶ 10.) On May 13, 2020, AmGuard denied Iva Joy's insurance claim for the loss because her application indicated the home had a sprinkler system when, in fact, it did not. (*Id.* ¶ 7.)[4] On June 16, 2020, Plaintiffs tendered a bad faith notice letter to AmGuard. (Id. ¶ 11.) AmGuard refused to pay any for the Joys' losses, even after receiving the bad faith notice letter. (*Id.* ¶ 12.)

After the Joys filed suit against AmGuard, AmGuard filed a Third-Party Complaint against Lancaster and the Lancaster Insurance Agency. (Lancaster Statement of Undisputed Fact ¶ 6.) In the Third-Party Complaint, AmGuard alleges that pursuant to an agency agreement between AmGuard and Lancaster, Lancaster owes AmGuard a duty to indemnify, defend, and hold AmGuard harmless from the Joys' claims. (*Id.* ¶ 7.) Pursuant to the indemnification clause in the agency agreement, either party to the agreement (AmGuard or Lancaster) is entitled to

---

[4] The Joys have asserted as one of the material facts of their case that AmGuard knew the fire had left them homeless and refused to cover their loss anyway. (Pls.' Statement of Undisputed Fact ¶ 9.) The Joys also state that AmGuard knew that the Joys' loss of their home posed a significant and substantial risk to their physical and financial security during the COVID-19 outbreak. (*Id.* ¶ 13.) While AmGuard does not dispute these fact claims, the Court finds that they are not actually material to the questions of law presented in the parties' summary

indemnity from the other for claims that arise out of the "negligence, error, omission, or intentional act" of the other.  (*Id.* ¶¶ 8, 9.)

One evidentiary issue bears further discussion.  The Joys assert, and both AmGuard and Lancaster appear to concede, that Anthony Lancaster or one of his office employees prepared the electronic application and mistakenly added the information about the sprinkler system in the Joys' home.  *See* Joys' Resp. to Lancaster's First Set of Interrog. No. 13 (ECF No. 57-3) ("AmGuard knew on May 5, 2020, that its own agent had prepared the application . . . ."); AmGuard's Resp. to Joys' First Set of Interrog. No. 4 (ECF No. 59-2) ("AmGuard has determined that Anthony Lancaster Insurance Agency/Anthony Lancaster made an error on the e-application that his staff filled in online indicating that there were protective devices, i.e. sprinklers inside the home."); Lancaster Decl. ¶ 5 (". . . on the application that my employee completed for the Joys . . .").

While it appears to be undisputed then that the agent or someone in his office filled in the erroneous information found in the "proposal," there remains a dispute over whether Iva Joy signed the "Proposal of Insurance."  AmGuard asserts Iva Joy signed the "Proposal of Insurance" and has made a copy of the "Proposal of Insurance" an exhibit to the Walden declaration, including a signature page with a handwritten signature reading "Iva D. Joy" dated December 17, 2019.  *See* Walden Decl., ex. B.  The Joys respond that Iva Joy signed the "e-application" prepared by Anthony Lancaster "in blank" and dispute AmGuard's claim that Joy "affirm[ed] all of the terms and representations in the Proposal of Insurance, including that Plaintiffs' home had automatic sprinklers in it."  *See* Pls.' Resp. to AmGuard's Statement of Undisputed Fact ¶¶ 1, 3 (ECF No. 59-1).  The problem with the Joys' position is that they have cited no evidence to

_____

judgment motions.

support their claim that Iva Joy signed the application "in blank."  In their response brief, the Joys cite the declaration of Anthony Lancaster (ECF No. 58-4) and an otherwise unidentified document appearing to set out an internal procedure (ECF No. 57-5).[5]  But neither of these exhibits shows who signed the application submitted on behalf of the Joys.  And counsel for the Joys conceded as much at the motion hearing.  The Court therefore finds no evidence in the record to support the Joys' claim that Iva Joy merely signed the page "in blank."

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if the party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Supreme Court has stated that "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near the law-fact divide." *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009).  In reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court does not engage in "jury functions" like "credibility determinations and weighing the evidence."  *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 515 (6th Cir. 2019) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)). Rather, the question for the Court is whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.  *Anderson*, 477 U.S. at 252.  In other words, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or

---

[5] The Joys' same response cites "Exhibit 1" and "Objection" as support for their position. The Court understands the "Objection" to be a reference to the Motion to Strike, which the Court

whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In this case the Court has subject-matter jurisdiction by virtue of the parties' diversity of citizenship and the amount in controversy. 28 U.S.C. § 1332. A federal court sitting in diversity applies the law of the forum state, including the forum's choice-of-law rules. *Atl. Marine Constr. Co. Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 582 (2013); *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 692 (6th Cir. 2013). In contract cases, Tennessee follows the rule of *lex loci contractus*, meaning that "a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent" such as a valid contractual choice-of-law provision. *Se. Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672 (6th Cir. 2006) (applying Tennessee law); *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973).

The parties in this case have briefed the substantive law of the state of Tennessee in their motion papers. As in any case where the Court has jurisdiction based on the parties' diversity of citizenship and Tennessee law applies, the Court has as its task to anticipate or predict how the Tennessee Supreme Court would decide the issues based on all of the available data. *Fox v. Amazon.com, Inc.*, 930 F.3d 415, 422 (6th Cir. 2019) (citing *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607 (6th Cir. 2012)). This includes the published opinions of the Tennessee Court of Appeals. *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 358 (6th Cir. 2018) (citing Tenn. Sup. Ct. R. 4(G)(2) for the proposition that a published opinion of the Tennessee Court of

has already addressed. The reference to "Exhibit 1" is not clear.

Appeals is "controlling authority for all purposes unless and until such opinion is reversed or modified by a court of competent jurisdiction"). The Court will assume for purposes of deciding the questions of law presented in the Rule 56 Motions that Tennessee law governs the parties' dispute.

## ANALYSIS

The Court holds that genuine issues of material fact remain for trial as to whether AmGuard is liable to the Joys for their property loss. Several things appear to be undisputed at this stage of the proceedings. There is no real dispute that Iva Joy had homeowners insurance with AmGuard and that her policy insured her property against certain damages, including fire. The Joys then suffered a fire loss of the sort Ms. Joy's policy would typically cover and while her coverage was otherwise in effect. There is also no real dispute that the policy as written conditioned AmGuard's coverage, in part, on the presence and good working order of a sprinkler system in the home and that the Joys had no such system in place. These facts might be fatal to the Joys' breach of contract claim against AmGuard except for one more undisputed fact, that an employee of the agent who originated the policy included the information regarding the home sprinkler system at the Joys' property by mistake.

The Court now turns to each party's Rule 56 Motion and their arguments about the legal consequences of this proof on the Joys' claims against AmGuard.

## I.      AmGuard's Motion for Summary Judgment

In its Motion for Summary Judgment, AmGuard seeks judgment as a matter of law on the Joys' breach of contract claims because the Joys breached one of the conditions of AmGuard's coverage, the presence of a sprinkler system for fire suppression at their home. In AmGuard's view, Iva Joy's application for the homeowners policy contained a misrepresentation about the

sprinkler system.  AmGuard accepted the application, and the parties entered into a contract with coverage conditioned on the existence of the sprinklers in the home.  Because the home had no sprinklers, AmGuard believes it is not obligated to cover the Joys' fire loss as a matter of law.

AmGuard has correctly stated Tennessee law on the contractual nature of insurance policies and the limiting effect of contract exclusions.  On its own terms, Iva Joy's policy makes the sprinkler system a condition of AmGuard's coverage.  The policy's declarations page stated that "[a]s a condition of this insurance, you MUST maintain the protective devices or services shown below and discussed on form HO 99 83 attached to your policy."  (ECF No. 56-3, Page ID 498.)[6]  The "protective device" listed on the declarations page was "Sprinkler: in all areas

---

[6] AmGuard has made a certified copy of the policy part of the record at summary judgment.  The certified copy contains the full homeowners policy and its declarations (ECF No. 56-3, Page ID 521-83), including the page cited by AmGuard, Page ID 498, to support its claim about the policy condition for "protective devices."  The Court notes that this specific page is not, however, the only page of this sort found in the certified copy of the policy.

In one instance, a page with the heading "Protective Devices," states, "As a condition of this insurance, you MUST maintain the protective devices or services shown below and discussed on form HO 99 83 attached to your policy. You should also be prepared to supply proof of proper maintenance upon request." (Page ID 525.)  Just below that appears a subheading "Name of Device" and under the subheading the policy reads: "Sprinkler: in all areas except attic, bathroom, closet & attached structure areas."  (*Id.*)

The certified copy of the policy also contains an "amended declarations" page (Page ID 511-17) (hereinafter "Amended Declarations I").  Amended Declarations I includes the same "protective devices" page (Page ID 515) with the reference to the sprinkler system. A box appears at the top of the first page of Amended Declarations I (Page ID 511) and reads, "In consideration of $113.00, we agree that the policy declarations are changed as follows: Modifiers. Changes, effective 12/18/2019, are attached to and form part of this policy." (*Id.*) Nothing else in Amended Declarations I explains what "Modifiers" were amended.

The certified copy includes yet another "amended declarations" (Page ID 503-509) (hereinafter "Amended Declarations II").  Amended Declarations II includes the page on "protective devices" (Page ID 507) but under the subheading "Name of Device" only the letters "N/A" appear.  Just like Amended Declarations I, Amended Declarations II has a box at the top of the first page (Page ID 503) and reads, "In consideration of $199.00, we agree that the policy

except attic, bathroom, closet & attached structure areas" as a "protective device."  (*Id.*)  The Joys had no such system at their property, even though Iva Joy had signed a "Proposal of Insurance" stating that they did have such a system.  The policy provisions are clear and unequivocal as matter of Tennessee contract law: AmGuard has no contractual duty to cover the Iva Joy's losses in the absence of a sprinkler system.  And insofar as the information about sprinklers in the Joys' home was the result of some mistake or error, AmGuard also correctly argues that "[b]y signing an insurance application and attesting to its truthfulness, an insured is generally bound to everything the application contains." *Metro. Prop. & Cas. Ins. Co. v. Bell,* No. 04-5965, 2005 WL 1993446, at *3 (6th Cir. Aug. 17, 2005) (citing *Beasley v. Metro. Life Ins. Co.*, 229 S.W.2d 146, 147 (Tenn.1950)); *see also Morrison v. Allen*, 338 S.W.3d 417, 428 (Tenn. 2011) ("In *Beasley,* this Court ruled that a material misrepresentation on an insurance application signed by the applicant may support a later denial of coverage by the insurer, even where the applicant claims to have been unaware of the misrepresentation.").  This means that in the normal course, a customer like Iva Joy applying for

---

declarations are changed as follows: Home Information, Policy Forms. Changes, effective 12/18/2019, are attached to and form part of this policy."  (*Id.*)

Finally, the certified copy has one last "amended declarations" (Page ID 494-500) (hereinafter "Amended Declarations III").  In this version, the "<u>Name of Device</u>" subheading on the "protective devices" no longer has the letters "N/A" written below it and instead as the same statement about a sprinkler system ("Sprinkler: in all areas except attic, bathroom, closet & attached structure areas.") found in other versions of the "protective devices" pages. And just like the other "Amended Declarations" pages, Amended Declarations III has a box at the top of its first page (Page ID 494) and reads, "In consideration of $-199.00, we agree that the policy declarations are changed as follows: Home Information, Policy Forms. Changes, effective 12/18/2019, are attached to and form part of this policy."  (*Id.*)

None of the parties have cited these variations in the certified copy of the policy or explained how they may be relevant to any of the questions of law presented in the Rule 56 Motions.  The Court simply notes the apparent amendments as they relate to "protective devices"

insurance is bound by the statements contained in the signed application for the policy, even if the customer signed the application without reading it.

AmGuard's position, however, glosses over a number of critical gaps in the evidence and leaves unanswered a series of questions about the application process and how the erroneous information about the sprinklers ended up in Iva Joy's policy. First, the parties agree that Iva Joy made her application for the homeowners policy in some electronic format and that an employee of the Lancaster Agency, and not Iva Joy, entered the information into the electronic application. So while AmGuard's briefing claims that Iva Joy made an "application" with AmGuard, there is no written application in the record, much less a written application signed by Iva Joy. Not only has AmGuard failed to produce a written application signed by Iva Joy, the only document AmGuard has included in the record is a "Proposal of Insurance." According to AmGuard's own evidence, the "Proposal of Insurance" is "a document in which AmGuard [ ] offers to provide a potential insured or insureds a policy of insurance." Walden Decl. ¶ 5 (ECF No. 56-3). AmGuard has not introduced any evidence to show how a "Proposal" is generated or why a "Proposal" (apparently prepared by AmGuard and its employees or agents) constitutes the application for insurance. At best the evidence shows the "Proposal of Insurance" came from AmGuard itself and contained information gathered from a potential customer like Iva Joy.

What is more, it appears to be undisputed that AmGuard's "Proposal" contained information mistakenly inserted by AmGuard's agent, the Lancaster Agency, into the "Proposal." AmGuard conceded in its discovery responses that someone at the agency mistakenly inserted the erroneous information about the sprinklers at the Joys' home into the "Proposal." What is not clear, at least from the evidence submitted by the parties at summary

for the record.

judgment, is how the error occurred.  No party has cited any testimony from Anthony Lancaster or any employee at his agency with knowledge of how the electronic application or the "Proposal" was prepared or why the information about the sprinklers found its way into the "Proposal."  There is no testimony from Iva Joy to show whether she was asked about sprinklers and, if so, what she understood the question to mean or how she answered it.  There is no proof about the phrasing of any question related to "protective devices" generally or sprinklers specifically. The Joys suggested at oral argument that the question may not have clearly addressed sprinklers for fire suppression as opposed to sprinklers for outdoor irrigation. *See Womack v. Blue Cross and Blue Shield of Tenn.*, 593 S.W.2d 294, 297 (Tenn. 1980) (stating that whether an answer to an ambiguously worded question on an insurance contract was a misrepresentation is a factual issue to be resolved by the jury).

The question of who injected the false information about the sprinkler is critical in this case.  The lack of a more complete record addressed to the gaps in the proof identified by the Court means the Court cannot decide whether Iva Joy made certain representations to the Lancaster Agency about her property and how an error of fact about sprinklers found its way into AmGuard's "Proposal of Insurance." AmGuard's Rule 56 Motion must be denied for this reason alone.

AmGuard argues that some of these details surrounding the in-take process and the preparation of the "Proposal" may not matter because Iva Joy signed the "Proposal of Insurance," thereby affirming the truth of each of the facts in the "Proposal."  But once again, the "Proposal" on its face does not appear to be Ms. Joy's application, as much as it is AmGuard's offer to issue a policy.  The "Proposal" clearly states that it is not the policy itself or the binder, and the signature page at the end of the "Proposal" describes the customer simply as a

17

"prospect." This suggests that the document is nothing more than a quote.  Furthermore, nothing on the signature page states that by signing AmGuard's "Proposal," the "prospect" was attesting or affirming the truthfulness of the facts in "Proposal."  And AmGuard has cited no evidence to show how AmGuard's agent described the "Proposal" to Iva Joy, whether the agent read over the "Proposal" with her, or whether Ms. Joy had an opportunity to review the "Proposal" and ask questions prior to signing it.  The Court would add that the "Proposal" AmGuard has included in the record contains two different copies of the same signature page, one blank without a signature and the other bearing what seems to be Ms. Joy's signature.  The Joys have implied that the signature may not be Ms. Joy's or that she may have signed the page "in blank," though the Joys have not come forward with evidence to make those showings.  The signed page appears to be the only page returned to AmGuard via fax (or at least the only page of the "Proposal" with the kind of date and time stamp associated with facsimiles) and just highlights the unanswered questions surrounding the application process.  In sum, AmGuard has not shown how its "Proposal" is entitled to the same treatment as an insured's application for a policy and attested for its truthfulness.  Without filling in these evidentiary gaps, AmGuard has not shown how Tennessee's *Beasley* rule applies in this case.

AmGuard finally argues that Tennessee law makes the policy voidable based on the misrepresentation about the sprinkler system.  AmGuard argues that Joy's misrepresentation about the sprinkler system increased the company's risk of loss and therefore makes the coverage voidable.  AmGuard relies on Tenn. Code Ann. § 56–7–103, which states that "[n]o written or oral misrepresentation or warranty made in the negotiations of a contract or policy of insurance, or in the application for contract or policy of insurance, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless the

misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss." Tenn. Code Ann. § 56–7–103. An insurer raising this defense must prove two elements: (1) "that the answers to the questions on the application were false" and (2) "that the misrepresentation was material, which requires proving *either* that the false answers were given with intent to deceive the insurer *or* that the false answers increased the risk of loss." *Howell v. Colonial Penn Ins. Co.,* 842 F.2d 821, 822 (6th Cir. 1987) (citing *Womack*, 593 S.W.2d at 294).

But AmGuard has not introduced evidence to satisfy all of the statute's requirements for voidability based on a misrepresentation. As the Court has already discussed, AmGuard has not shown that the "Proposal" constituted Joy's application for the policy. Perhaps more important, section 56–7–103 states that a misrepresentation must be made "by the insured or in the insured's behalf." AmGuard has made neither of these showings at summary judgment. AmGuard has not carried its burden to show that Ms. Joy was the source of any misrepresentation in the "Proposal." The parties appear to agree that the factually inaccurate claim about the sprinklers was inserted into the "Proposal" by an employee of the Lancaster Agency. In fact, AmGuard alleges in its third-party complaint against Lancaster that Lancaster made the misrepresentation. Third-Party Compl. ¶ 11 (ECF No. 39). There is no other proof to show why Lancaster's employee added the details about the sprinklers. Without some evidence showing that the inaccurate information came from Iva Joy, AmGuard has not shown that the misrepresentation about the sprinklers was made "by the insured." There is also no evidence that the Lancaster Agency made the misrepresentation "in the insured's behalf." It appears to be undisputed that the Lancaster Agency acted on behalf of AmGuard, and not Iva Joy, as its authorized agent for originating policies. *See* AmGuard's Resp. to Lancaster's Statement of

Undisputed Fact ¶ 1, ECF No. 63).  Without this evidence, AmGuard has not shown why it is entitled to judgment as a matter of Tenn. Code Ann. § 56–7–103.

In the final analysis, the question of how and with whom a misrepresentation about the sprinklers originated is an issue to be determined by the finder of fact.  *Smith v. Tenn. Farmers Life Reassurance Co.*, 210 S.W.3d 584, 589 (Tenn. Ct. App. 2006).  The Court concludes that triable issues remain, at least based on the record available to the Court, over whether AmGuard is liable to the Joys.  For all of these reasons, AmGuard's Motion for Summary Judgment is **DENIED**.

## II. The Joys' Motion for Partial Summary Judgment

In their Motion for Summary Judgment on the question of liability, the Joys argue that AmGuard should be estopped from denying coverage due to the error of their agent.  "An insurance company is generally deemed estopped to deny policy liability on a matter arising out of the negligence or mistake of its agent, and if either party has to suffer from an insurance agent's mistake, it must be the insurance company."  *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 519–20 (Tenn. 2012) (collecting cases).  It is likewise true that "knowledge of an insurance agent will be imputed to the insurance company unless it is plainly indicated that there is fraud and conspiracy between the insured and the company agent, and that the agent will not reveal the true facts to the principal." *Beasley*, 229 S.W.2d at 146.  In this case there is undisputed evidence that an employee at the Lancaster Agency inserted the incorrect information about the sprinkler system at the Joys' home as part of the in-take process to develop a quote for the insurance.  However, for some of the same reasons the Court has already discussed, the evidence surrounding the mistake is incomplete and certainly not so one-sided as to warrant judgment as a matter of law.

Turning the tables and viewing the proof in a light most favorable to AmGuard, the Court holds that the Joys are not entitled to judgment as a matter of law on the question of liability. The Joys have shown that a mistake occurred during the preparation of AmGuard's "Proposal of Insurance." They have not shown how the mistake happened. For example, they have not introduced any proof concerning whether Lancaster or one of his employees inquired about a sprinkler system, whether the question was ambiguous, or what information Iva Joy may have given in response. Just as the gaps in the proof left triable issues over AmGuard's claim that there was a misrepresentation about the sprinklers, the same gaps in the proof preclude summary judgment for the Joys on the question of whether a mistake by the Lancaster Agency should estop AmGuard from denying liability. Therefore, the Joys' Motion for Summary Judgment on the liability issue is **DENIED**.

### III. Lancaster's Motion for Summary Judgment

This leaves Lancaster and the Lancaster Agency's Rule 56 Motion on AmGuard's third-party claims for indemnification. The Joys' theory of liability is that the Lancaster Agency's supposed error should estop AmGuard from denying coverage under Iva Joy's homeowners policy. AmGuard's third-party complaint alleges that the Lancaster Agency's negligence may have allowed the false information about the sprinkler system to end up in the policy. If the Joys hold AmGuard liable for the Lancaster Agency's error, then AmGuard seeks indemnity from the Lancaster Agency and Lancaster based on the parties' agency agreement (ECF No. 39-1).

The agreement between AmGuard and the Lancaster Agency[7] contains the following indemnification clause:

---

[7] In point of fact, the parties to the agency agreement appear to be AmGuard and the Anthony Lancaster Insurance Agency, Inc. The Third-Party Complaint names Anthony

16.     INDEMNIFICATION

Each party ("Indemnitor") shall indemnify, defend, and hold the other party ("Indemnitee") . . . harmless from any loss, claim, suit, action, fine, liability, judgment, damage, cost or expense including but not limited to reasonable attorneys' fees and costs, sustained by the Indemnitee arising out of or resulting from any negligence, error, omission or intentional act of the indemnitor or anyone acting on behalf of the Indemnitor or resulting from the Indemnitor's failure to perform within the authorized scope of this Agreement.

One of the duties undertaken by the Lancaster Agency "within the authorized scope" of the agency agreement was the duty "to investigate carefully the insurability of all applicants" as well as its warranty to "diligently and to the best of its ability ensure that the facts set forth by any applicant in any application it solicits are true, correct and contain no misrepresentation or incorrect characterizations."  Agency Agr. (3) (ECF No. 39-1).

The Third-Party Defendants make a number of arguments, largely addressed to possible outcomes in the case and how those outcomes should result in judgment in their favor on AmGuard's third-party complaint for indemnification.  First, in the event AmGuard prevails and is not liable to the Joys, then AmGuard's third-party complaint for indemnity against Lancaster and the Lancaster Agency is moot.  Second, in the event the Joys prevail on their breach of contract claim, then AmGuard will simply be held to its contract with the Joys and pay for their covered loss.  In the alternative, if AmGuard is liable to the Joys, AmGuard failed to comply with its policies to verify the existence of the sprinkler system.  Under either scenario, indemnification is not justified.  Finally, concerning the Joys' bad faith claim, AmGuard cannot shift responsibility for its conduct and seek indemnity from the Lancaster Agency or Lancaster

---

Lancaster in his individual capacity as a Third-Party Defendant, even though Anthony Lancaster was not a party to the agency agreement.  The Third-Party Complaint makes no other allegations to show why Lancaster would be liable to AmGuard in his individual capacity.

for a possible bad faith award or punitive damages, particularly where there was no insured-insurer relationship between the Joys and the Third-Party Defendants.

Before reaching the merits of Third-Party Defendants' arguments, the Court finds that AmGuard has waived some of the issues presented in the Motion for Summary Judgment. Although AmGuard responded in opposition to Third-Party Defendants' Motion, AmGuard did not address two of the specific arguments raised in Lancaster's opening brief: (1) the possible mootness of the indemnity claim if the Joys cannot prove their estoppel claim against AmGuard and (2) the Lancaster Agency's duty to indemnify AmGuard for a potential bad faith penalty and award of punitive damages. "A plaintiff's failure to respond to an argument in a summary judgment motion is grounds for the Court to deem the opposition waived." *Hood v. City of Memphis Public Works Division*, No. 2:17-cv-02869-SHM, 2021 WL 918766, at *9 (W.D. Tenn. Mar. 10, 2021) (citing *Design Basics, LLC v. Chelsea Lumber Co.*, 977 F. Supp. 2d 714, 737 (E.D. Mich. 2013)). AmGuard's lack of a response to the arguments raised by the Third-Party Defendants in their opening brief amounts to a waiver of any opposition on these questions. Therefore, the Court holds that Third-Party Defendants are entitled to judgment as a matter of law on AmGuard's indemnity claim for any bad faith penalty or award of punitive damages the Joys may recover at trial. Third-Party Defendants are likewise entitled to summary judgment on AmGuard's claim for indemnity, should the jury find in AmGuard's favor on the Joys' underlying claim of liability. Therefore, the Motion for Summary Judgment is **GRANTED** as to these issues.

As for Third-Party Defendants' other arguments, the Court holds that in the event the Joys prevail on their estoppel claim against AmGuard, genuine issues remain for trial over the scope and extent of any contractual duty of indemnification the Lancaster Agency may owe

AmGuard.  The same questions of fact about how the Lancaster Agency gathered information from Iva Joy and how the information about the sprinkler system found its way into the electronic application prepared by the agency also preclude judgment as a matter of law on AmGuard's indemnity claim.  The agency agreement between AmGuard and the Lancaster Agency requires each party to indemnify the other for any damages or liability "arising out of or resulting from any negligence, error, omission or intentional act of the" party at fault.  Whether the Lancaster Agency was negligent or acted in error and whether its conduct was the cause of any liability incurred by AmGuard will require the finder of fact to make determinations from the proof and resolve certain factual disputes.  Until the jury has made its findings on those questions and then determined that AmGuard is liable to the Joys, the Court cannot rule as a matter of law that Third-Party Defendants have no duty to indemnify AmGuard.

Lancaster's Motion for Summary Judgment does not argue otherwise but instead takes the position that AmGuard will not be entitled to indemnification, even if the Joys prove their claims and recover damages from AmGuard at trial.  More specifically, Lancaster argues that if AmGuard is liable to the Joys, AmGuard will only be liable for the value of the Joys' insurance claim and in a manner consistent with the terms of Iva Joy's homeowners policy.  AmGuard will simply owe Joy the benefit of her bargain as an insured.  This is perhaps another way of saying that AmGuard will not be able to prove its damages "arose out of or resulted from" any act or failure to act by the Lancaster Agency.  But Third-Party Defendants' argument leaves out the fact that under this scenario, AmGuard will only be liable to the Joys because of the Lancaster Agency's negligence or error.  The Joys' policy as written conditioned coverage on the presence of fire suppression sprinklers in their home, a condition the Joys breached because they had no sprinklers in their home.  Under Tennessee law, AmGuard will not be liable to the Joys

contractually but only under the equitable doctrine of estoppel and only if the Joys prove that the Lancaster Agency's alleged error or negligence can be imputed to AmGuard.  Such a failure on the part of the Lancaster Agency arguably constitutes a breach of the agency's contractual warranty to "diligently and to the best of its ability ensure that the facts set forth by any applicant in any application it solicits are true, correct and contain no misrepresentation or incorrect characterizations."   Agency Agr. (3).   So Third-Party Defendants' argument concerning this scenario is unpersuasive.

Third-Party Defendants make one final alternative argument for judgment as a matter of law on the indemnity issue. Assuming the Joys prevail against AmGuard on the primary question of liability, the Lancaster Agency argues AmGuard's own errors and omissions should bar it from receiving indemnity from the Lancaster Agency.  Third-Party Defendants have introduced evidence that AmGuard's internal policies and procedures required the company to verify the existence of property features like the sprinkler system where the device entitled the customer to a discount.  If AmGuard did not receive verification of a protective device like sprinklers, AmGuard's practice was to change the sprinkler endorsement and remove the discount. AmGuard never verified the sprinklers at the Joys' home and never cancelled the policy.  Third-Party Defendants argue then that AmGuard should not be permitted to enforce the indemnification clause due to its own negligence.

The Court holds that Third-Party Defendants have not carried their burden to show why they are entitled to judgment as a matter of law on this issue.   Under Tennessee law, "there can be no recovery where there was concurrent negligence of both indemnitor and indemnitee unless the indemnity contract provides for indemnification in such case by 'clear and unequivocal terms.'"  *Farmers Mut. of Tenn. v. Athens Ins. Agency*, 145 S.W.3d 566, 569 (Tenn. Ct. App.

2004) (quoting *Kroger Co. v. Giem*, 387 S.W.2d 620 (Tenn. 1964) ("While *Kroger* involved an indemnity issue between joint tortfeasors, its teaching is applicable here, and further bolsters the rule that the agent should not be held liable in indemnity to an insurance company, where the insurance company's own negligence contributed to the issuance of the policy and the ensuing loss.").  Third-Party Defendants have not, however, cited this rule or shown how it would apply in this case to entitle them to summary judgment.

The Court finds then that genuine issues of fact remain for trial on whether AmGuard incurred a loss due to Lancaster's "negligence, error or omission" and therefore whether Lancaster will be liable to AmGuard to indemnify the loss.  Genuine issues also remain over the question of whether AmGuard's own failure to act somehow contributed to the "ensuing loss." Third-Party Defendants' Motion for Summary Judgment is **DENIED** as to these issues.

<u>CONCLUSION</u>

The facts surrounding the preparation of Iva Joy's homeowners policy remain disputed at this stage of the proceedings.  Therefore, AmGuard's Motion for Summary Judgment and the Joys' Motion for Summary Judgment are **DENIED**.  The Lancaster Agency's and Lancaster's Motion for Summary Judgment on the indemnification question is **GRANTED in part**, **DENIED in part**.

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date:  February 17, 2022.

26