IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| IVA JOY AND WILLIAM JOY, | ) |
|     Plaintiffs | ) |
| vs. | ) No. 1:20-CV-01131-STA-jay |
| | ) JURY DEMAND |
| AMGUARD INSURANCE COMPANY, | ) |
|     Defendant/Third Party Plaintiff | ) |
| vs. | ) |
| ANTHONY LANCASTER INSURANCE AGENCY, INC., | ) |
|     Third Party Defendants. | ) |

**THIRD-PARTY DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

The Third-Party Defendant, Anthony Lancaster Insurance Agency, Inc., by and through counsel, pursuant to Rule 50(a)(2) of the Federal Rules of Civil Procedures, moves this Court for judgment as a matter of law. In support of this Motion, Third-Party Defendant states as follows:

**I. FACTS**

At the trial of this matter, the proof has shown that Plaintiffs Iva and William Joy ("Joy") were customers of the Anthony Lancaster Insurance Agency (the "Agency") for a number of years prior to December 2019 and previously were insured by carriers other than AmGuard. When in need of a policy with AmGuard, the Agency, which previously entered an Agency Agreement with AmGuard and its affiliated companies, secured the Policy, which went into effect on December 18, 2019. As part of the online application process, Shunnica Ayers ("Ayers"), an employee of the Agency, selected the following under the "Protective Devices" section of the application:

**Automatic Sprinklers:**                                          in all areas except attic, bathroom, closet & attached structure areas

The proof has shown that the Joys' home had an outside irrigation system and Ayers interpreted AmGuard's application accordingly. At some point, Iva Joy signed the policy proposal, and the Policy went into effect on December 18, 2019. The purpose of the "Automatic Sprinkler"[1] selection was to advise AmGuard that the home had a fire suppression system, which resulted in a discount on the annual premium. While there was a dispute about the circumstances surrounding the signature on the Proposal of Insurance, Iva Joy admitted that she accepted the Policy and that it was in effect. There is no dispute that Ms. Ayers selected "Automatic Sprinklers" on the AmGuard application, and it was included as an endorsement on the Policy. Plaintiffs sued AmGuard for failure to pay the claim.

AmGuard's own internal policy was to verify presence of automatic sprinklers when these were indicated on a policy application:

**Automatic Sprinkler Cert/Photo**

**Required if:** On the Home Specifics tab -> Automatic Sprinklers are listed as Yes

**Required by:** After issuance; 30 days

**Procedure:** Issue the policy. If the cert/photo is not in file already, send the conversation requesting the cert/photo. Set a diary for 15 days. After 15 days, if the cert/photo is still not in file, we will send the follow up conversation and reset our diary for another 15 days. If not received after the full 30 days, we will endorse (Eff. the date of endorsement) the policy to change the Yes to a No.

If the cert/photo is received after the policy was already endorsed to change the answer to No, we will endorse the policy effective the installation date on the cert/date the photo was sent in to change the answer back to a Yes.

It is undisputed that AmGuard did not take any action at any point to verify the presence of the sprinklers. It is also undisputed that even if it had, it would not have canceled the Policy, as the internal policy only would have directed it to remove the endorsement for interior fire sprinklers.

---

[1] It is undisputed that this term was created by AmGuard.

A fire occurred at the Joys' home on May 5, 2020. The Joys made a claim under the Policy, which was denied because the home did not have automatic sprinklers on its interior. After the denial, suit was filed by Plaintiffs only against AmGuard, which filed a Third-Party Complaint against AmGuard.

## II. LAW AND ARGUMENT

The standard for a Motion for Judgment as a Matter of Law is set forth clearly under Rule 50 of the Federal Rules of Civil Procedure:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for that party, the court may:
>
> (A)  resolve the issue against the party; and
> (B)  grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1).

A Rule 50(a) motion may be made any time before the case is submitted to a jury. Fed. R. Civ. P. 50(a)(2). The motion just specifies the judgment sought and the law and facts that entitle the movant to judgment. *Id.* A Rule 50(a) motion "should not be reviewed narrowly but rather in light of the purpose of the rules to secure a just, speedy, and inexpensive determination of the case." *Kusens v. Pascal Co.*, 448 F.3d 349 (6th Cir. 2006). Where Rule 50(a)'s purpose in proving notice to the court and opposing counsel of any deficiencies in the opposing party's case before it is submitted to the jury has been met, "courts usually take a liberal view of what constitutes as pre-verdict motion sufficient to support a post-verdict motion." *Id.* In this trial, the proof has clearly shown that AmGuard cannot prevail against the Agency on the Third-Party Complaint as a matter of law. Accordingly, judgment as a matter of law should be rendered in the Agency's favor.

3

## A. AmGuard Sustained No "Loss" For Which Indemnity Is Required

AmGuard's Third-Party Complaint against the Agency is based upon the Agency Agreement, which contains the following indemnity clause:

> **16. INDEMNIFICATION.**
> Each party ("Indemnitor") shall indemnify, defend, and hold the other party ("Indemnitee"), its affiliates and subsidiaries, officers, directors, employees, successors, and agents harmless from any loss, claim, suit, action, fine, liability, judgment, damage, cost or expense including but not limited to reasonable attorneys' fees and costs, sustained by the Indemnitee arising out of or resulting from any negligence, error, omission or intentional act of the Indemnitor or anyone acting on behalf of the Indemnitor or resulting from the Indemnitor's failure to perform within the authorized scope of this Agreement. The Indemnitee will immediately notify the Indemnitor when the Indemnitee learns of or receives any claim that is covered under this Section.
>
> The Companies shall be entitled to participate in the defense of any action to which the Agent/Broker is the Indemnitor, or to assume the defense of such action with counsel of its own choosing. If the Companies assume the defense of any such action, Agent/Broker shall no longer be liable to the Companies for the payment of any legal or other expense subsequently incurred by the Companies in connection with such action.

In order to prevail on the indemnity claim, AmGuard must show that it suffered a "loss" caused by the Agency's "negligence, error [or] omission." The Agency submits that no such loss was sustained because of its conduct. It will be undisputed at trial that the Policy went into effect on December 18, 2019, and that had AmGuard followed its own internal policy to verify the presence of the automatic sprinklers, it would not have canceled the Policy, but simply would have removed the discount that was given because of the belief that they were in the home. In other words, the issuance of the Policy was not dependent upon the presence of the fire suppression system. Thus, it is arguable that if AmGuard did sustain a "loss" it consisted of the additional premium payment it would have received had the "No" box been selected by Ms. Ayers in the online application. The amount of the damages would thus not exceed $100.

### B. AmGuard's Concurrent Negligence Precludes Its Claim

The Court made clear in its order on the various motions for summary judgment [ECF No. 83] that a party cannot recover under an indemnity agreement where there is concurrent negligence of both indemnitor and indemnitee "unless the indemnity contract provides for indemnification in such case by 'clear and convincing evidence.'" *Farmers Mut. Of Tenn. v. Athens Ins. Agency*, 145 S.W.3d 566, 569 (Tenn. Ct. App. 2004) (quoting *Kroger Co. v. Giem*, 387 S.W.2d 620 (Tenn. 1964)). The operative indemnity agreement between AmGuard and the Agency does not require the Agency to indemnify AmGuard to the extent AmGuard was concurrently negligent, and it is the Agency's contention that it was. The presence of the fire suppression sprinklers was not verified, despite the internal policy of AmGuard that required it; the Policy would have remained in effect regardless of whether there was a fire suppression system in the home; and AmGuard did not provide notice of the loss in a timely fashion and thus waived its ability to bring the indemnity claim against the Agency.

The court's ruling in *Farmers Mut.* is very instructive here. In that matter, the insurance carrier filed a declaratory judgment action against the agency and the insureds, and the court held that the carrier was not entitled to indemnification from the agency. In *Farmers Mut.*, there was no written contract for indemnification, though the court held that the obligation to indemnify can arise from either an express contract or "by implication from the relationship of the parties." *Id*. at 568 (quoting *Houseboating Corp. of America v. Marshall*, 553 S.W.2d 588 (Tenn. 1977), thus making this a distinction without a difference. The court further held that while the trial court assessed the issue of comparative fault, the issue it was to consider was whether there was an implied right of indemnification. *Id.* Either way, the court determined that the analysis is the same as in assessing comparative fault:

> An insurance agent who fails to make a full disclosure of all matters concerning the risks and hazards of a prospective insurable interest, or to report the issuance of a policy as directed in his contract of agency, may incur liability to the insurer for exposing the insurer to liability for claims of loss under policies, where such claims naturally result from the agent's wrongful conduct. It must be proved, however, that the agent's conduct was the proximate cause of the loss to the insurer, and where the insurer was not prejudiced by the failure to report the policy issuance or to fully assess the risk involved, and would have done nothing differently or incurred no greater loss with or without such knowledge, the agent may escape liability for his wrongful conduct.

*Id.* In the present case, the analysis is identical. The Agency submits that AmGuard was not prejudiced by its conduct, as the Policy would have been issued regardless of whether "Automatic Sprinklers" was selected on the application. In fact, the only "loss" to the insurer was the decreased premium, which in a period of five months would have equated to less than $100. AmGuard's assistant vice president of personal lines, Dawn Aigeldinger, testified to just that. Ms. Aigeldinger testified that AmGuard's only loss, had it followed its internal policy and removed the discount, then it would have approved the claim. Had the discount been removed, then the loss to AmGuard would be about $200.

The *Farmers Mut.* court further held that an agent may only be held liable to an insurance company "when his conduct causes the insurance company to suffer a loss that it otherwise would not have suffered." *Id.* The court then cited the aforementioned rule from *Kroger Co. v. Giem*, 215 Tenn. 459, 387 S.W.2d 620 (Tenn. 1964) that if both parties to an indemnity agreement are concurrently negligent, the indemnitee is not entitled to recover unless the agreement clearly and unequivocally states that the indemnitor must indemnify the indemnitee in that situation. There is no question that the indemnity agreement at issue in this case is bilateral and that the agreement does not require that the Agency indemnify AmGuard for its own negligence. That will only take place where there is a clear intention of the parties. *Olin Corp. v. Yeargin Inc.*, 146 F.3d 398 (6th Cir. 1998). Here, to the extent AmGuard was concurrently negligent for the alleged loss, it cannot

6

recover under the operative indemnity agreement. The proof has clearly shown that AmGuard failed to take even the most basic action to verify the presence of the sprinklers. If it had done so, it would have simply removed the sprinkler endorsement from the Policy and kept it in effect. The fact that the AmGuard's internal policy was not known to the other parties prior to suit is not relevant. There is no dispute that the internal policy existed and that AmGuard failed to follow it. In a claim for indemnity, AmGuard must be free of negligence to prevail, and has not cleared that bar.

### C. The Term "Automatic Sprinklers" Is Ambiguous

There is no dispute that the application software utilized by Ms. Ayers was created by AmGuard, and it created the term "Automatic Sprinkler." Ms. Ayers interpreted this to mean the outdoor sprinkler system and secondary water source the Joys had for the outside of their home. Her interpretation was reasonable, and any conflict about its meaning is evidence of its ambiguousness. All ambiguities in a contract are construed against the drafter and in favor of the non-drafting party. *German v. Ford*, 300 S.W.3d 692, 704 (Tenn. Ct. App. 2009). Here, there can be no question but that the term was ambiguous, and it should be resolved in the Agency's favor as a matter of law.

### D. AmGuard Failed To Provide Timely Notice Of Intent To Seek Indemnity

The proof has shown that AmGuard first notified the Agency of its intent to seek indemnity under the Agency Agreement when its counsel sent a letter demanding indemnity on January 4, 2021. At the very latest, AmGuard knew Plaintiffs were claiming error by the Agency by the filing of the Complaint on June 16, 2020. Accordingly, AmGuard waited six months and 19 days to advise the Agency that it was going to seek indemnity under the Agency Agreement. Importantly, the indemnity provision of the Agency Agreement states that "[t]he Indemnitee will

*immediately notify the Indemnitor when the Indemnitee learns of or receives any claim that is covered* under" paragraph 16 (Indemnification) (emphasis added). AmGuard's counsel attempted to illicit testimony regarding the fact that the Agency knew of the Joys' insurance claim shortly after the fire loss. This is not what the indemnification agreement in this case speaks to and is, therefore, irrelevant to this Court's finding on this matter. Rather, the indemnification provision requires AmGuard (the Indemnitee) to immediately notify the Agency (the Indemnitor) when AmGuard learned of or received a claim that is "covered under this Section." In other words, AmGuard was required to timely notice Lancaster of its intention to invoke the indemnification agreement of the Agency Agreement. The nearly seven-month delay cannot be considered immediate notice, and this constitutes a violation of the Agency Agreement.

In construing a contract between parties, the words contained therein are to be given their usual, natural, and ordinary meaning. *Ballard v. North American Life & Casualty*, 667 S.W.2d 79 (Tenn. Ct. App. 1983). In *Allstate Ins. Co. v. Wilson*, 856 S.W.2d 706 (Tenn. Ct. App. 1992), the court found that an accident that was not reported to an insurance company on a loss for five months and one day did not comply with the policy's requirement that "prompt" notice be given. The court cited the principle set forth in 44 *Am.Jur.2d*, Insurance, §1330, which equates "prompt" notice with the "immediate notice" required in the indemnity clause at issue:

> A requirement in a policy for "prompt" or "immediate notice" or that notice must be given "immediately" "at once", "forthwith", "as soon as practicable", or "as soon as possible" generally means that the notice must be given within a reasonable time under the circumstances of the case.

*Id.* at 709. The court further states that in the circumstances of an insurance policy, which is interpreted under the same contractual rules as an ordinary contract, no coverage is provided even when there is no forfeiture clause, and no prejudice is borne by the delay. *Id.* (citing *Tennessee Farmers Mut. Ins. Co. v. Nee*, 643 S.W.2d 673, 675 (Tenn. Ct. App. 1982). Furthermore, the court

found that the duty to give notice does not arise until an ordinarily or reasonably prudent person would have known of the occurrence. *Id*. (citing *Osborne v. Hartford Accident & Indem. Co.*, 63 Tenn. App. 518, 476 S.W.2d 256 (Tenn. Ct. App. 1972). The court found that the insureds' five months' notice did not comply with the terms of the policy.

While the contract at issue here is not an insurance policy, the same analysis the court in *Allstate* applied is applicable here. AmGuard is a sophisticated entity that knew of the litigation right away. At no point did it make a demand for indemnity under the Agency Agreement, and it therefore waived its right to pursue the indemnity claim when it raised the issue at the time it filed the Third-Party Complaint. In its answer to that pleading, the Agency specifically asserted waiver as an affirmative defense. [ECF No. 47, ¶ 19]. On this basis alone, AmGuard's indemnity claim should fail and a verdict as a matter of law should be granted, as AmGuard failed to comply with a material term of the Agency Agreement.

**E.  AmGuard Cannot Show Agency Breached the Standard of Care**

In order to prevail on its claim against the Agency, AmGuard must prove that the Agency's negligence, error, or omission caused a loss. Essentially, this is a straightforward negligence analysis, as AmGuard must show breach of a duty that caused it harm. Because this action involves the conduct of a professional, i.e. an insurance agent[2], AmGuard must have proven the breach of the standard of care, and this can only be done by expert testimony. AmGuard failed to designate an expert witness and produced no expert to prove this breach,  Therefore, its claim for negligence under the indemnity agreement must fail. The Court has made it clear that it intends to instruct the jury on this standard and to instruct it to only rely upon expert testimony as to the breach of the

---

[2] Both Anthony Lancaster and Shunnica Ayers testified that they are licensed insurance producers in Tennessee.

standard of care. Because no expert testimony was presented in this case, judgment as a matter of law should be entered for the Agency.

### III.  CONCLUSION

For the reasons set forth herein, the Agency submits that judgment as a matter of law is appropriate on the grounds that AmGuard cannot prevail on its claim for breach of the indemnity agreement, and submission of this claim to the jury is unnecessary.

Respectfully submitted,

LEWIS THOMASON, P.C.

By: */s/ David A. Changas*
David A. Changas, BPR No. 20679
Robert Reid, BPR No. 33900
424 Church Street, Suite 2500
Nashville, TN  37219
Telephone: (615) 259-1366
dchangas@lewisthomason.com

*Attorney for Third Party Defendants*

## CERTIFICATE OF SERVICE

   I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail and email. Parties may access this filing through the Court's electronic filing system.

   Drayton D. Berkley, Esq.
   Pembroke Square
   119 South Main Street, Suite 500
   Memphis, TN  38103

   Brian Walthart, Esq.
   McAngus Goudelock & Courie, LLC
   201 Fourth Avenue North, Ste. 1400
   Nashville, TN 37219

This 29th day of June, 2022.

                */s/ David A. Changas*