IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| IVA JOY and WILLIAM JOY,  ) | |
|                                                     ) | |
|        Plaintiffs,                           ) | |
| v.                                                ) | No. 1:20-cv-1131-STA-jay |
|                                                     ) | |
| AMGUARD INSURANCE COMPANY,  ) | |
|                                                     ) | |
|        Defendant/Third-Party Plaintiff,  ) | |
| v.                                                ) | |
|                                                     ) | |
| ANTHONY LANCASTER      ) | |
| INSURANCE AGENCY, INC.,     ) | |
|                                                     ) | |
|        Third-Party Defendant.         ) | |

**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

Before the Court is Defendant AmGuard Insurance Company's Motion for Judgment as a Matter of Law (ECF No. 155) filed July 12, 2022. AmGuard asks the Court to set aside a jury verdict in favor of Plaintiffs Iva Joy and William Joy and grant AmGuard judgment as a matter of law. Plaintiffs have responded in opposition, and Defendant has filed a reply. For the reasons set forth below, the Motion is **DENIED**.

**BACKGROUND**

The Court has set out the factual contentions of the parties in previous orders and need not recite the facts in full here. Briefly, Plaintiff Iva Joy applied for a homeowners insurance policy issued by Defendant AmGuard Insurance Company ("AmGuard"). Joy worked with an insurance agency, the Anthony Lancaster Insurance Agency, Inc. ("the Lancaster Agency"), and its owner

1

Anthony Lancaster ("Lancaster") to obtain coverage with AmGuard. The Lancaster Agency was an authorized agent of AmGuard. An employee of the Lancaster Agency prepared a Proposal of Insurance, stating that Joy's home was equipped with "automatic sprinklers." Iva Joy signed the Proposal of Insurance, and AmGuard issued a homeowners policy insuring the Joys' property. Joy's policy conditioned coverage on the presence of a sprinkler system in the home for fire suppression. It turned out, however, that the Joys' residence did not have a sprinkler system, so when a fire broke out in the home several months later, the property suffered serious damage. AmGuard thereafter denied Joy's claim for the damages, citing the policy condition based on the sprinklers.

The parties proceeded to trial on June 27, 2022. Following three days of proof, a jury returned a verdict in favor of the Joys on their claim that AmGuard had breached their insurance policy. The jury awarded the Joys damages of $228,148 for the loss of their dwelling, $69,000 for the contents of their home, and $68,444 in additional living expenses. *See* Verdict (ECF No. 150). The jury further found that AmGuard had acted in bad faith and awarded the Joys an additional penalty against AmGuard equal to ten percent (10%) of their damages plus pre-judgment interest. *Id*.

Tenn. Code Ann. § 56–7–103 states that "[n]o written or oral misrepresentation or warranty made in the negotiations of a contract or policy of insurance, or in the application for contract or policy of insurance, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless the misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss." Tenn. Code Ann. § 56–7–103. The Tennessee Supreme Court has held that a jury must decide whether an insurance applicant's "answers were false and, if so, whether there was intent to deceive" and

recommended the use of a special verdict to ascertain the jury's findings on these questions of fact. *Womack v. Blue Cross and Blue Shield of Tenn.*, 593 S.W.2d 294, 295 (Tenn. 1980) (citing Tenn. R. Civ. P. 49.01). Consistent with Tennessee practice, the Court posed special interrogatories to the jury in this case concerning AmGuard's defense that Iva Joy made a material misrepresentation on the Proposal of Insurance. The jury determined that Mrs. Joy had made a material misrepresentation in the Proposal of Insurance but also found that Mrs. Joy had not acted with an intent to deceive.

In its Motion for Judgment as a Matter of Law, AmGuard now argues that the Court should set aside the jury's verdict under Tenn. Code Ann. § 56–7–103 because Iva Joy's material misrepresentation increased AmGuard's risk of loss. Tenn. Code Ann. § 56–7–103 also permits an insurer to "defeat coverage by showing . . . that the matter represented increased the risk of loss." *Vermont Mut. Ins. Co. v. Chiu*, 21 S.W.3d 232, 235 (Tenn. Ct. App. 2000). AmGuard relies on the jury's finding that Iva Joy made a material misrepresentation on the Proposal of Insurance and argues that the insurance policy is voidable because the misrepresentation increased AmGuard's risk of loss.

The Joys counter that AmGuard cannot avail itself of the defense under Tenn. Code Ann. § 56–7–103. In the Joys' view, the Lancaster Agency was acting as the agent of AmGuard in originating Iva Joy's homeowners policy. The Lancaster Agency also had actual knowledge the Joys' property did not have automatic sprinklers. So AmGuard cannot now argue that any misrepresentation in the Proposal of Insurance increased its risk of loss. The Joys further argue that AmGuard's failure to follow its own internal procedures to confirm whether the Joys' home was equipped with sprinklers shows that the information about the sprinklers did not materially increase the company's risk of loss. The proof at trial also showed that had AmGuard known the

3

truth about the lack of sprinklers at the property, then AmGuard would have still issued the policy but charged an additional $200 in annual premium for the coverage.  In essence, the Joys contend that $17 more in monthly premium payments is not material.  Finally, the Joys maintain that the Proposal of Insurance, submitted in blank, was not an "application," as that term is used in Tenn. Code Ann. § 56–7–103.

AmGuard has filed a reply brief with additional support for its request for judgment as a matter of law. AmGuard disputes the Joys' claim that the misrepresentation had to result in a material increase in AmGuard's risk of loss.  AmGuard argues that the misrepresentation itself has to be material.  Regardless of the label the Joys give it, the Proposal of Insurance was described as their "application" throughout the trial proceedings.  The jury has now determined that Iva Joy made a material misrepresentation in the Proposal of Insurance.  So, the Court should dismiss the Joys' argument that the Proposal was not an "application" for purposes of Tenn. Code Ann. § 56–7–103 or that Iva Joy may have signed it in blank.  Finally, AmGuard contends, as it has throughout this case, that the Joys are stuck with the representations contained in the Proposal of Insurance, regardless of what information to the contrary was known to the Lancaster Agency.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 50 governs motions for judgment as a matter of law in jury trials and provides for two types of relief, one during a trial and the other after the trial.  Rule 50(a) permits a trial court to grant such a motion against a party, if the party "has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).  The court may "(A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only

with a favorable finding on that issue." *Id*. A party may move for judgment as a matter of law "at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). "A district court should grant a judgment as a matter of law where there is no legally sufficient evidentiary basis for a reasonable jury to find for [a party] on that issue." *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007) (internal quotation marks omitted). The court must construe the evidence in the light most favorable to the non-moving party. *Id*. An in-trial motion for judgment as a matter of law "alerts the court to the opportunity to simplify the trial by resolving some issues, or even all issues, without submission to the jury." *Hanover Am. Ins. Co. v. Tattooed Millionaire Entm't, LLC*, 974 F.3d 767, 784 (6th Cir. 2020) (citing Note to 2006 Amendment to Fed. R. Civ. P. 50). The court must construe the evidence in the light most favorable to the non-moving party. *Denhof*, 494 F.3d at 543.

AmGuard's Motion comes after the trial, meaning the procedures under Rule 50(b) apply in this instance. Rule 50(b) provides that "[i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). Once the case goes to the jury, however, a party must formally renew its motion for judgment as a matter of law under Rule 50(b). *Tattooed Millionaire*, 974 F.3d at 780. But a party forfeits its opportunity to make a Rule 50(b) motion if it has not first made a Rule 50(a) motion before the case goes to the jury. *Id*. at 789. "The 1963 Advisory Committee Note to Rule 50(b) makes explicit what is implicit (but plain) in the language of the rule: 'A motion for judgment notwithstanding the verdict will not lie unless it was preceded by a motion for a directed verdict made at the close of all the evidence.'" *Id.* Where the jury has rendered a verdict, Rule 50(b)

permits a district court to allow the verdict to stand, order a new trial, or direct entry of judgment as a matter of law.  Fed. R. Civ. P. 50(b).  AmGuard seeks entry of judgment as a matter of law.

## ANALYSIS

The issue presented is whether AmGuard is entitled to judgment as a matter of law on the Joys' breach of contract claim because Iva Joy's misrepresentation about sprinklers in her home increased AmGuard's risk of loss.  "The threshold question of whether a misrepresentation exists is a question of fact which should ordinarily be determined by a jury if one is requested." *Howell v. Colonial Penn Ins. Co.*, 842 F.2d 821, 823 (6th Cir. 1987).  The jury has made its determination of this question and found that Iva Joy made a material misrepresentation on the Proposal of Insurance, though she did so without the intent to deceive.

Therefore, it now falls to the Court to decide as a matter of law whether the misrepresentation increased AmGuard's risk of loss.  *Womack*, 593 S.W.2d at 295 ("[B]ut only the trial judge may determine whether false answers materially increased the risk of loss.") (citation omitted); *Broyles v. Ford Life Ins. Co.*, 594 S.W.2d 691, 693 (Tenn. 1980) ("[W]hen it has been determined that the answers contained in the application are untrue, it becomes a question of law, not fact, for the court as to whether the misrepresentations materially increased the risk of loss.").  "A misrepresentation in an application for insurance increases the insurance company's risk of loss if it naturally and reasonably influences the judgment of the insurer in making the contract." *Yarnell v. Transamerica Life Ins. Co.*, 447 F. App'x 664, 674 (6th Cir. 2011) (citing *Lane v. Am. Gen. Life and Acc. Ins. Co.,* 252 S.W.3d 289, 295–96 (Tenn. Ct. App. 2007)).  As the party invoking the statutory defense, the burden is on AmGuard to establish that Iva Joy's misrepresentation increased its risk of loss. *Tenn. Farmers Mut. Ins. Co. v. Farrar*, 337 S.W.3d

829, 835 (Tenn. Ct. App. 2009) (citing *McDaniel v. Physicians Mut. Ins. Co.,* 621 S.W.2d 391, 393 (Tenn. 1981)).

AmGuard relies on two principal facts to support its position that Iva Joy's misrepresentation about the sprinklers increased AmGuard's risk of loss as a matter of law. First, AmGuard points to the question in the Proposal of Insurance itself regarding the presence of "automatic sprinklers" in the Joys' home. The proof at trial showed, and the Joys do not contest the point, that AmGuard's proprietary software included a question about "automatic sprinklers" and that the Proposal of Insurance stated that the home had "automatic sprinklers" "in all areas except attic, bathroom, closet, & attached structure areas." Although the jury did not make any special findings about how the false information was made on the Proposal, the jury did find in response to a special interrogatory that Iva Joy had made a material misrepresentation in the Proposal.

"The courts may use the questions an insurance company asks on its application to determine the types of conditions or circumstances that the insurance company considers relevant to its risk of loss. *Farrar*, 337 S.W.3d at 835 (citing *Johnson v. State Farm Life Ins. Co.,* 633 S.W.2d 484, 487 (Tenn. Ct. App. 1981)). After all, the questions on an application reflect the "information which the insurer in good faith sought to discover and which they must have deemed necessary to an honest appraisal of insurability." *Howell v. Colonial Penn Ins. Co.*, 842 F.2d 821, 824 (6th Cir. 1987) (quoting *Johnson*, 633 S.W.2d at 488). The fact that AmGuard requested information about the presence of "automatic sprinklers" at the property suggests that AmGuard considered the presence of "sprinklers" relevant to its risk of loss and its "honest appraisal of insurability."

AmGuard next appeals to common sense for the proposition that a "protective device" like "automatic sprinklers" would lower the risk of fire at the property. Courts applying Tennessee law have cited examples from common experience and everyday life to establish an insurance company's risk of loss. *Smith v. Tenn. Farmers Life Reassurance Co.*, 210 S.W.3d 584, 591 (Tenn. Ct. App. 2006) (remarking that "common sense" shows "that persons with DUI convictions have a higher risk of death, especially deaths caused by automobile accidents"); *Chiu*, 21 S.W.3d at 237 ("Our conclusion that the existence of Chiu's business pursuits on the premises is a factor that would 'naturally and reasonably influence' an insurer's judgment is also a matter of common sense."). While the actual cause of loss need not be directly related to the misrepresentation, AmGuard is very likely correct that the presence of a sprinkler system for fire suppression would as a simple matter of common sense reduce the risk of fire in a structure, particularly the risk of a total loss like the one the Joys suffered. *Dutton v. Tenn. Farmers Mut. Ins. Co.*, 577 S.W.3d 222, 226 (Tenn. Ct. App. 2018) ("It is well settled in Tennessee that regardless of what caused the loss, if the policy is obtained through fraud or misrepresentation which materially increases the risk of loss, it is voidable from its inception.") (citation omitted). This factor tends to support the conclusion that the use of "automatic sprinklers" at the Joys' property was relevant to AmGuard's risk of loss and perhaps "naturally and reasonably" influenced AmGuard's decision "in making the contract." *Yarnell*, 447 F. App'x at 674.

AmGuard lastly cites the testimony of Dawn Aigeldinger, AmGuard's vice president of personal lines. "[C]ourts frequently rely on the testimony of insurance company representatives to establish how truthful answers by the proposed insured would have affected the amount of the premium or the company's decision to issue the policy." *Lane v. Am. Gen. Life and Acc. Ins. Co.*, 252 S.W.3d 289, 296 (Tenn. Ct. App. 2007) (citing *Bagwell v. Canal Ins. Co.*, 663 F.2d 710, 712

(6th Cir. 1981)). Ms. Aigeldinger testified at trial that Iva Joy's misrepresentation increased AmGuard's risk of loss. *See* Excerpted Tr. Proceedings, Aigeldinger Tr. Testimony 29:4-10 (ECF No. 156-1) ("Q. What were the representations that increased the risk of loss to AmGuard? A. They represented that they had sprinklers. Q. How did that increase the risk of loss to AmGuard? A. In the event of a fire there were no sprinklers. Q. Is a fire more or less likely with sprinklers? A. Less likely."). Ms. Aigeldinger's testimony on how the absence of sprinklers in the Joys' home increased AmGuard's risk of loss was somewhat conclusory. *Ky. Cent. Life Ins. Co. v. Jones*, 7 F.3d 233, 1993 WL 328028, at *9 (6th Cir. Aug. 27, 1993) (table decision) ("[B]are, post hoc assertions of the insurers agents, employees, or officers [concerning the risk of loss] will not suffice."). And while AmGuard highlighted Ms. Aigeldinger's experience in the insurance industry, AmGuard did not "demonstrate, by actuarial evidence or otherwise, that the falsehood in controversy caused it to take on either a greater risk of loss than it had bargained for, or a risk that it would not have assumed under any circumstances." *Id.* Ms. Aigeldinger's testimony on this point largely reinforced the common-sense proposition that "a fire is less likely with sprinklers than it is without sprinklers." Def.'s Mem. in Support 8 (ECF No. 156). In other words, the testimony was essentially an appeal to everyday experience on matters well within the kiln of the ordinary layperson. The Court finds that Ms. Aigeldinger's testimony on these points did not add much in terms of demonstrating an increase in AmGuard's risk of loss.

In sum, AmGuard has pointed to the fact that its insurance application inquired about "automatic sprinklers" and the straightforward proposition that the presence of "automatic sprinklers" would have mitigated the risk of fire at the Joys' home. Generally speaking, truthful answers to the questions on an insurance application have bearing on the insurer's risk of loss, particularly when the policy covers risks of property damage and the question concerns the use of

protective or safety devices to prevent damage to the property. In the typical insurance dispute involving Tenn. Code Ann. § 56–7–103, AmGuard's proof might well suffice to discharge its burden, showing as it does that a misrepresentation like Iva Joy's had the theoretical effect of increasing the insurance company's risk of loss.

Even so, under the unique facts of this case, AmGuard has not discharged its burden to show that Iva Joy's misrepresentation increased its risk of loss. Other evidence shows that Iva Joy's misrepresentation did not have the effect of increasing AmGuard's risk of loss. Even though the Proposal of Insurance stated that the Joys' home was equipped with automatic sprinklers, Iva Joy's misrepresentation was not the final word on the matter. Courts look at "the practice of an insurance company with respect to particular information" as part of the determination of whether a misrepresentation "naturally and reasonably influenced the judgment of the insurer." *Howell*, 842 F.2d at 824 (citing *Broyles*, 594 S.W.2d at 693). The proof showed that AmGuard viewed the "automatic sprinklers" as the basis for a premium discount. The jury heard evidence that the presence of sprinklers entitled Iva Joy to a discount of $200 on her annual homeowners premium and that AmGuard would have issued the policy on Joy's property regardless of the use of sprinklers. And although Iva Joy's policy conditioned its coverage on "automatic sprinklers," the proof further showed that had AmGuard later learned the Joys' home did not have sprinklers, AmGuard would have simply dropped the discount and amended the policy to remove the coverage conditioned on the use of "automatic sprinklers." This tends to show that the application's question about "automatic sprinklers" was merely the basis for a discounted premium, not an inquiry to make a full assessment of AmGuard's risks.

What is more, the trial proof showed that AmGuard had its own internal policies to verify the presence of a "protective device" like "automatic sprinklers." Ms. Aigeldinger explained to

the jury that rather than relying only on the information given by the customer in the application, AmGuard typically required customers to furnish proof of the existence of a protective device. AmGuard had its own detailed instructions for contacting customers to request the proof and even to continue to follow up with the customers for some time thereafter. The written procedure, which was admitted into evidence as Trial Exhibit 4, contained a caption reading "Automatic Sprinkler Cert/Photo." When a customer applied for a policy and answered "yes" to the question about "automatic sprinklers," AmGuard's procedure allowed the policy to issue but required the customer to provide proof of "automatic sprinklers" within 30 days. AmGuard was to follow up with the customer within 15 days of issuing the policy and then again 15 days later. In the event the customer did not furnish the proof within the time required by the internal policy, AmGuard employees would remove the discount and issue an amended endorsement to the policy to reflect that coverage was not conditioned on the presence of the protective device. In other words, an insured's failure to provide the evidence "would cause an insurance company to look further into the matter and make additional inquiries" as part of its risk assessment. *Howell*, 842 F.2d at 824 (citing *Johnson*, 633 S.W.2d at 488). To the extent then that the application contained any facts AmGuard could not later corroborate, AmGuard would disregard the facts as a matter of policy and amend the policy to reflect that change. And should the customer later provided verification, AmGuard's policy was to reinstate the discount for the protective device and once more amend the coverage to show that the protective device was a policy condition.

Ms. Aigeldinger testified, however, that AmGuard failed to follow its own procedure in this case. For reasons she could not explain, AmGuard chose not to obtain proof from Mrs. Joy about the presence of "automatic sprinklers" in her home. And there was no proof that AmGuard ever notified Iva Joy of the need to produce evidence to show that her home had sprinklers.

> Q. You testified that the endorsement was designed to reduce -- sprinklers reduce the risk. And the endorsement is an indication that you have the sprinklers, that the home has sprinklers. Correct?
> A. Yes.
> Q. And that would reduce the cost of the premium, correct, because your risk is lower, right?
> A. Yes.
> Q. Okay. In this case, no one from AmGuard followed this procedure, did they?
> A. No.
> Q. Okay. No one checked to make sure there was a sprinkler in this home, did they?
> A. No.
> Q. No one called the Joys to see, is there a sprinkler in this home?
> A. We would not do that, no.
> Q. No one called the agency to see, to ask to follow up on this.
> A. No.

Excerpted Tr. Proceedings, Aigeldinger Tr. Testimony 43:14-44:8.

Ms. Aigeldinger explained that AmGuard's policy was an "aspiration," suggesting that the procedure was nothing more than a best practice. *See* Aigeldinger Tr. 29:4-10 ("Q. These are policies, or internal procedures that the company sets forth itself. Is that correct? A. It's a manual aspiration."). Ms. Aigeldinger admitted nevertheless that Iva Joy also received a discount for having multiple lines of insurance with AmGuard and that AmGuard did follow the procedure to confirm the Joys' multiline discount. In fact, Ms. Aigeldinger confirmed that the Lancaster Agency had originated a total of seven AmGuard homeowners policies where four stated that the homes had automatic sprinklers. In those cases AmGuard took steps to follow its internal procedure and verify the information about sprinklers provided in the proposals of insurance only one time. *Id*. at 54:25-55:16 ("No. We followed up on one policy out of the four.") Ms. Aigeldinger also testified that she had no information about the total number of homeowners policies AmGuard issued in the state of Tennessee where homes were equipped with automatic sprinklers. This proof reasonably suggests that had AmGuard simply requested evidence of the

sprinklers from Ms. Joy at the same time that it requested proof to support her multiline discount, the error concerning the sprinklers would have come to light soon after Iva Joy obtained coverage in late 2019. *Id*. at 46:19-47:2 ("Q. If the policy had been followed by AmGuard, its own internal policy had been followed, it would have either learned that -- obviously, in this case, would have learned that there were no sprinklers in the home, and it would have changed the endorsement on the sprinklers from a yes to a no, and would have removed that endorsement. Would you agree with me? A. Yes."). Either way, this is not a case where Iva Joy's misrepresentation prevented AmGuard from taking "additional measures to make a honest appraisal of insurability." *Chiu*, 21 S.W.3d at 237.

In sum, when given the opportunity to confirm or verify the presence of "automatic sprinklers" at the Joys' property, AmGuard failed to follow its own internal policy and never took steps to verify the existence of the sprinklers. The evidence shows AmGuard's application inquired about a series of "protective devices" at the property including "automatic sprinklers." The particular question concerning "automatic sprinklers" seemed to be the basis for a discounted premium. To the extent that "sprinklers" may reasonably and naturally have bearing on the insurer's risk of loss, the insurer had other procedures available to it to make a determination of its risks. The fact that AmGuard did not avail itself of its own processes to verify and confirm the presence of sprinklers (but at the same time sought out information about Iva Joy's multiline discount) strongly suggests that AmGuard did not treat the misstated information about sprinklers from Iva Joy's application as part of its assessment of risk. It follows that Iva Joy's misrepresentation did not "deny the insurer of information which they, in good faith, sought to discover" and that AmGuard did not regard the information about the automatic sprinklers as "necessary to an honest appraisal of insurability." *Johnson*, 633 S.W.2d at 488. Therefore, the

Court holds that Iva Joy's misrepresentation in the Proposal of Insurance did not increase AmGuard's risk of loss.

Having decided the principal issue presented in AmGuard's Rule 50(b) Motion, the Court pauses to add here that judgment as a matter of law would arguably be inconsistent with the jury's verdict in favor of the Joys. The Court instructed the jury that the Joys could only recover on their breach of contract claim against AmGuard if the jury found (1) that AmGuard had waived the policy condition regarding the sprinklers and/or (2) that AmGuard should be estopped from enforcing the condition due to the mistake or negligence of its authorized agent, the Lancaster Agency. The Court also instructed the jury on the law of agency and specifically how the acts of an agent may bind its principal. The jury found for the Joys on the breach-of-contract claim, meaning that the jury determined AmGuard had waived the sprinkler condition in the policy and/or that AmGuard should be estopped from enforcing the sprinkler condition due to the actions of its agent.

AmGuard's affirmative defense regarding its risk of loss arguably runs headlong into the jury's determination that AmGuard nevertheless breached Iva Joy's homeowners policy. Even if Mrs. Joy's misrepresentation increased AmGuard's risk of loss, the jury found that AmGuard had breached the policy, either because it waived the policy condition on sprinklers or because as matter of equity AmGuard should not be permitted to escape liability due to the mistake or negligence of its agent. This is simply not a case where the Joys were entitled to the benefit of the bargain stated in their policy. After all, the policy specifically conditioned coverage on "automatic sprinklers" at their property. The Joys only prevailed because the jury determined that other equitable grounds existed to waive or estop the enforcement of the policy as written. The parties have not fully developed this issue in their briefing, though the Joys' briefing perhaps hinted at it.

14

In the final analysis, the Court finds it unnecessary to address it further as part of its consideration of the Rule 50(b) Motion. The Court simply notes that AmGuard's affirmative defense may be bound up with other issues the jury already decided as part of its verdict on the ultimate issue of liability.

## CONCLUSION

AmGuard has not carried its burden to show why Iva Joy's misrepresentation on the Proposal of Insurance increased its risk of loss. Therefore, the Motion for Judgment as a Matter of Law must be **DENIED**.

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: September 8, 2022.